IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MAXIE D. THOMPKINS, JR.,

                Plaintiff,                OPINION AND ORDER

v.

                                                22-cv-537-wmc

TAMMY MAASSEN,

                Defendant.

---

While incarcerated by the Wisconsin Department of Corrections ("DOC"), plaintiff Maxie D. Thompkins, Jr., filed a complaint under 42 U.S.C. § 1983, claiming that defendant Tammy Maassen denied him adequate medical care for his diabetes. Representing himself, Thompkins was granted leave to proceed with Eighth Amendment claims against Maassen.[1] Maassen has moved for summary judgment on Thompkins' claims against her. (Dkt. #24.) For the reasons explained below, Maassen's motion will be granted.

UNDISPUTED FACTS[2]

At all times relevant to the complaint, Thompkins was incarcerated at DOC's

---

[1] At that time, the court also granted plaintiff leave to proceed against and another defendant, Lieutenant John Doe, but he was later dismissed due to plaintiff's repeated failure to seek discovery with respect to that defendant's actual name. (Dkts. #8, #21, #22.)

[2] Unless otherwise noted, the following facts are undisputed as drawn from the defendant's proposed findings of fact, as well as the underlying evidence submitted in support. Plaintiff did not respond to defendant's proposed findings of fact or submit any of his own and did not present any conflicting evidence. Thus, the defendant's proposed findings of fact are deemed undisputed to the extent they are supported by evidence in the record, which is viewed in the light most favorable to plaintiff as non-movant. *See* W.D. Wis. Proc. to be Followed on Mot. For Summ. Judg., § II(C), (E); *Hedrich v. Bd. of Regents of Univ. of Wisconsin Sys.*, 274 F.3d 1174, 1178 (7th Cir. 2011) (courts are to consider only evidence set forth in proposed findings of fact with proper citation); *Smith v.*

Jackson Correctional Institution ("JCI"), where defendant Maassen is employed as the Health Services Manager ("HSM"). As the HSM, Maassen provides administrative support and direction for JCI's Health Services Unit ("HSU"). Maassen also supervises the nursing staff, but she does not supervise the physicians or other advanced care providers ("ACPs"), nor does she provide direct treatment to inmates.

Thompkins has Type II diabetes. There is no cure for Type II diabetes, but it can be managed with medication, diet, and lifestyle changes. In Thompkins' case, he requires insulin to maintain his blood sugar levels throughout the day and must also eat what is recommended. At JCI, diabetic inmates who require insulin are generally brought to a designated room at the HSU and given a personal box of their diabetes medication to self-administer. Patients are also responsible for reviewing their medications and making sure they are accurate before administering them.

From January 2019 through January 2020, Thompkins' medical records show that his blood sugar levels frequently ranged from low to high. In particular, during the 2019 calendar year, Thompkins was sent to the Black River Falls Memorial Hospital Emergency Room for low blood sugar on the following occasions: March 4, May 27, August 27, and September 29. Because of these issues with regulating Thompkins' blood sugar levels, the ACPs who were treating him recommended, in addition to taking his daily medication, that he eat meals at regular intervals throughout the day and eat "snack bags" as necessary throughout the day to maintain his blood sugar levels.

---

*Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[A] failure to respond by the nonmovant as mandated by the local rules results in an admission.").

Even so, Thompkins' voluminous medical records also reflect that he had multiple issues with compliance with the ACPs' recommendations, including skipping meals and snacks, as well as not rotating his injection sites for the insulin he was prescribed.[3] Because Thompkins' blood sugar levels continued to vary widely during this time, he was frequently seen in the HSU, where he continued to be seen by ACPs regarding compliance issues with his diet and exercise.

Maassen spoke to Thompkins' mother by phone in early March 2019 about her concern that he needed to be at a different prison facility with ACPs on duty 24 hours a day. One of Thompkins' ACPs also participated in that phone call, during which they discussed Thompkins' issues with compliance. Maassen had a similar phone call with Thompkins' mother in April 2019, after which she advised her in a subsequent voicemail that his ACP had ordered a consultation for Thompkins with an endocrinologist at the University of Wisconsin Hospital in Madison. That appointment was scheduled for early May 2019, although the endocrinologist who initially saw Thompkins at that time did not recommend a change in his insulin, but instead chose to wait for further information.

Accordingly, between May and December 2019, HSU staff at JCI continued to consulted with UW endocrinologists to help regulate Thompkins' blood sugar levels. Because ascertaining the correct insulin combination is often accomplished by trial and error, Thompkins' prescription for insulin was changed multiple times in 2019. Specifically, Thompkins was next seen by a UW endocrinologist in July 2019., who

---

[3] Even after excluding optical and dental treatment, defendant has provided over 1000 pages of medical records ranging from June 1, 2018, until the date of his release from prison in 2023. (Dkt. #27-1 through #27-9.)

recommended changing Thompkins' dose of "Glargine" insulin to 15 units and increasing his regular insulin to 5 units. During a telemedicine appointment in October 2019, a UW endocrinologist further recommended discontinuing Thompkins' regular insulin due to the possibility that it was causing bouts of hypoglycemia (low blood sugar). Instead, that endocrinologist recommended changing Thompkins to "Humalog" insulin and repeating an A1C test in December to determine if there was any positive change. Despite being seen in the HSU for low blood sugar multiple times in December, Thompkins nevertheless had a hypoglycemic episode while in the Neillsville Housing Unit at JCI on December 29, 2019. By the time a nurse had arrived on the housing unit, Thompkins was already on the floor with a superficial head wound of approximately 1 centimeter in length, reportedly as the result of being tased by security staff after engaging in aggressive behavior, although Thompkins now claims this behavior had been induced by his low blood sugar.

As a result of this December 29 incident, Thompkins was placed in Temporary Lock Up ("TLU") status. HSU staff continued to monitor him throughout the night and the following days. On January 3, 2020, Thompkins was next sent to Black River Falls Memorial Hospital for a CT scan, which fortunately resulted in no adverse findings.

Thompkins next filed an Inmate Complaint in January 2020, claiming that the HSU should be held responsible for not changing his insulin prescription in a timely fashion. Specifically, Thompkins alleged that his insulin prescription was changed in October 2019, but he was not informed of the change until January 10, 2020. After reviewing Thompkins' medical records, it appeared that an ACP did make a change to Thompkins' insulin on

4

October 28, 2019, from the insulin "Novolin R" to "Lispro." However, it was also unclear from the electronic medical records *who* ordered the change or why that change was made.

OPINION

To prevail on a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). Here, plaintiff claims that defendant Maassen violated his rights under the Eighth Amendment by failing or refusing to provide him with a different form of insulin when his prescription was changed. In particular, plaintiff appears to allege that rather than being prescribed the Humalog insulin recommended by the UW endocrinologist in October 2019, he was instead given a different type of insulin that failed to prevent his purported hypoglycemic episode in December 2019. Defendant has moved for summary judgment, arguing that plaintiff has no evidence showing that she violated his rights. Defendant argues further that she is entitled to qualified immunity.

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact[,] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-07 (7th Cir. 2009) (alteration adopted and quotation marks omitted).

5

At summary judgment, disputed facts are viewed in a light most favorable to the plaintiff as the non-moving party. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017). Further, while pro se litigants are entitled to liberal construction of their pleadings and submissions, they, too, have the burden to come forward in response to a motion for summary judgment with evidence that demonstrates a genuine issue of material fact. *Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011) ("[A plaintiff's] pro se status doesn't alleviate his burden on summary judgment.") (citation omitted). In particular, while the court views the record "in the light most favorable to the nonmovant and constru[es] all reasonable inferences from the evidence in his favor," *Moore v. Western Ill. Corr. Ctr.*, 89 F.4th 582, 590 (7th Cir. 2023), but a nonmovant is only entitled to favorable inferences that are supported by admissible evidence, not those based upon mere speculation or conjecture, *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017), or "[c]onclusory statements, not grounded in specific facts," *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016).

I.  **Claims Under the Eighth Amendment**

The Eighth Amendment gives prisoners the right to receive "adequate medical care." *Estelle v. Gamble*, 429 U.S. 97 (1976). To prevail on a claim of constitutionally inadequate medical care, therefore, an inmate must demonstrate two elements: (1) an objectively serious medical condition; and (2) a state official who was deliberately (that is, subjectively) indifferent to the risks presented by that condition. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett*, 658 F.3d, at 750. This essentially means that a prisoner must provide sufficient evidence for a reasonable jury to find defendant liable for "deliberate

6

indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle,* 429 U.S. at 104 (quotation marks and citation omitted).

Defendant does not dispute that plaintiff had an objectively serious medical need for insulin, but argues that there is no evidence that she acted with deliberate indifference. "Deliberate indifference" means that the official was aware that the prisoner faced a substantial risk of serious harm but disregarded that risk by consciously failing to take reasonable measures to address it, which is a decidedly high standard. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). Thus, acts of deliberate indifference require more than negligence or even gross negligence, if something less than purposeful acts. *Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994). Specifically, the threshold for deliberate indifference is met where: (1) "the official knows of and disregards an excessive risk to inmate health or safety"; or (2) "the official [is] both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," *and* he or she draws that inference yet deliberately fails to take reasonable steps to avoid it. *Id*. at 837.

As the HSM serving in an administrative or supervisory role, defendant argues that plaintiff has not and cannot establish the requisite deliberate indifference on her part to his serious medical need as a diabetic because she was neither responsible for treating inmates nor had any authority to prescribe or change medications authorized by ACPs. (Dkt. #25, at 10-12.) The court agrees. To be held liable under § 1983, a plaintiff must prove, among other things, the defendant's *personal participation or direct responsibility* for the alleged constitutional deprivation. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018)

7

(citing *Wilson v. Warren Cnty.*, 830 F.3d 464, 469 (7th Cir. 2016)). If the defendant lacked authority to provide the care requested, she cannot be held liable for violating the plaintiff's rights. *See Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012) ("[D]efendants cannot be [held liable under the Eighth Amendment] if the remedial step was not within their power.").

Plaintiff does not dispute that he was under the care of ACPs while at JCI and that the ACPs were responsible for authorizing his prescriptions. Plaintiff further presents no evidence from which a reasonable jury could conclude defendant was personally involved in providing medical treatment, much less that she had *any* authority over the medication he was prescribed. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017); *see also Machicote v. Roethlisberger*, 969 F.3d 822, 828 (7th Cir. 2020) (holding that a health services manager was not liable where she had no authority to intervene in treatment prescribed by a doctor). Although defendant held an administrative and supervisory role in the HSU, plaintiff cannot hold her vicariously liable for the actions of his treatment providers or insist that she perform the jobs of others. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("[N]o prisoner is entitled to insist that one employee do another's job"). Perhaps, as the HSM, a jury might infer her negligence or even gross negligence in the HSU's apparent error in changing out prescribed insulin product for another, though absent some evidence of defendant's personal involvement in the mistake this would be a stretch, as would finding defendant's rile causative of any injury to plaintiff. Further, no reasonable jury could find that defendant acted with *deliberate indifference* to plaintiff's medical needs by failing to recognize an error in the prescribed medication or refusing to change his

8

medication over which she had no authority. Thus, plaintiff has not established a constitutional violation of the Eighth Amendment and defendant is entitled to summary judgment on plaintiff's claim against her.

## II. Qualified Immunity

Additionally, defendant asserts entitlement to qualified immunity. (Dkt. #25, at 13.) Qualified immunity protects government officials from liability for damages unless they clearly violate statutory or constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once the defense is raised, a plaintiff bears the burden of defeating it. *Garcia v. Posewitz*, 79 F.4th 874, 778 (7th Cir. 2023). Here, plaintiff has also failed to come forward with sufficient evidence to show that defendant violated his constitutional rights by denying him adequate care with deliberate indifference. Accordingly, the court concludes that defendant is entitled to qualified immunity as well.

## ORDER

IT IS ORDERED that:

1) Defendant Tammy Maassen's motion for summary judgment (dkt. #24) is GRANTED.

2) The clerk of court is directed enter judgment in favor of the defendant and to close this case.

Entered this 4th day of November, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

9